**FILED**

FEB **18** 2022

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITTNEY BUCKNER and VANCE DOTSON <br><br> Plaintiff, <br><br> v. <br><br> ENHANCED RECOVERY COMPANY, LLC, and ACCOUNT RESOLUTION SERVICES, d/b/a HEALTHCARE REVENUE RECOVERY GROUP, LLC., and CAC FINANCIAL CORP., <br><br> Defendants. | ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) <br> ) Case No. <br> )    5:22-cv-00002-D <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

PLAINTIFF'S MOTION TO STRIKE THE AFFIRMATIVE DEFENSES IN
HEALTHCARE REVENUE RECOVERY GROUP, LLC d/b/a ARS ACCOUNT
RESOLUTION SERVICES ("HRRG") ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Brittney Buckner and Vance Dotson and files

this Motion to Strike[1] Defendant's Affirmative Defenses included in its Answer

that was filed on February 8, 2022 (Dkt. 27). Plaintiff states the following in

support thereof:

## I.   INTRODUCTION

---

[1] Graham v CAC Financial Corp., CIV 18-376-R Doc 10 Aug 29, 2018 Judge
Russell Striking Similar insufficiently pled Affirmative Defenses

On February 8, 2022, Defendant filed an answer that denied many of the Plaintiff's allegations and asserted ten affirmative defenses. See (Dkt. 27 at Pages 10-12). The specific affirmative defenses in Defendant's answer that Plaintiff contends are insufficiently pled, frivolous, vague, conclusory, and without factual basis are:

i. Defendant affirmatively pleads, HRRG asserts that Plaintiffs have failed to state a claim upon which relief may be granted.

ii. Defendant affirmatively pleads, HRRG disputes that Plaintiff Brittney Bucker's alleged assignment to Plaintiff Vance Dotson is a valid assignment. 12 O.S. § 2017 (D) ("[t]he assignment of claims not arising out of contract is prohibited."); *see also Trinity Mortg. Cos. v. Dryer*, 451 Fed. Appx. 776 (10th Cir. 2011) ("finding that "Trinity gave Junker an ownership interest for the specific and sole purpose of permitting Junker to litigate Trinity's claims against [its former counsel]" and disallowing the *de facto* assignment because it was "clearly against public policy."); *Lester v. Minnesota Life Ins. Co.*, Case No. 13-CV-443- JED-PJC, 2014 U.S. Dist. LEXIS 4373 (N.D. Okla. Jan. 14, 2014) (holding that plaintiff could not maintain tort claims for fraud, bad faith, emotional distress or duress based upon assignment because Oklahoma law prohibits the assignment of tort claims); *Rose Grp., L.L.C. v. Miller*, 2003 OK CIV APP 18, 64 P.3d 573, 575 (Okla. Civ. App. 2003) ("Section 2017(D) prohibits

the assignment of claims not arising from contract. This section embodies the common law rule that a chose in action arising out of a pure tort is not assignable."); *accord Montoya v. State Farm Mut. Auto. Ins. Co.*, Case No. 16-00005 (RCL), 2016 U.S. Dist. LEXIS 141322 (W.D. Tex. Oct. 12, 2016) ("[The Texas Supreme Court has declared that DTPA claims generally cannot be assigned by an aggrieved consumer to someone else because the cause of action is "personal and punitive."); *Stearns v. Wheeler, LLC v. Kowalsky Bros., Inc.*, 289 Conn. 1, 9-10, n. 12, 955 A.2d 538 (2008) ("Therefore, although CUTPA claims are neither contract nor tort claims, and CUTPA claims may occasionally arise out of contractual relationships, the considerations of business necessity that underlie the policy allowing free assignment of ordinary contract rights may not apply generally to CUTPA claims. The policies against trafficking in personal claims and excessive litigation, in contrast, may apply. Indeed, in light of the expanded remedies available under CUTPA, most notably, the availability of attorney's fees, the temptation for 'unscrupulous interlopers and litigious persons'..to interfere would be greater in this context than in tort claims, giving these concerns even greater force.") (internal quotations and citations omitted). Further, upon information and belief, the purported assignment between Plaintiff

3

Buckner and Plaintiff Dotson may lack consideration and for that additional reason may be void.

iii. Defendant affirmatively pleads, HRRG denies that Plaintiffs have suffered any actual damages; however, if such damages do exist (which is denied) then HRRG asserts that such actual damage claims are subject to the defense of failure to mitigate.

iv. Defendant affirmatively pleads, HRRG asserts that it was not the proximate and/or producing cause of Plaintiffs' alleged damages, if any.

v. Defendant affirmatively pleads, HRRG asserts that any alleged damages to Plaintiffs, which HRRG continues to deny, is the result of the acts or omissions of Plaintiffs or other third-parties, over whom HRRG has no control and to whom HRRG has no responsibility.

vi. Defendant affirmatively pleads, HRRG denies that Plaintiffs are entitled to, or should, recover statutory damages in any amount for any claim. *See, e.g., Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 176 L.Ed.2d 519 (2010).

vii. Defendant affirmatively pleads, HRRG asserts that an award of statutory damages in the absence of actual damages would be a denial of its right to due process under the Constitution of the United States of America. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S.

408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003); *BMW of N. Am. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 1234 L. Ed. 2d 809 (1996).

viii. Defendant affirmatively pleads, HRRG asserts that it has not willfully, knowingly or negligently committed any wrongful, illegal or inappropriate acts.

ix. Defendant affirmatively pleads, HRRG asserts that if any violations of the FDCPA did occur (which it denies), then such violations were unintentional, and they occurred as a result of a *bona fide* error, notwithstanding the maintenance of procedures reasonably adapted to avoid and prevent the alleged violations. Therefore, HRRG is entitled to the defense provided by 15 U.S.C. § 1692k(c).

x. Defendant affirmatively pleads, HRRG reserves the right to assert additional affirmative and other defenses as may become apparent during discovery.

## II.    DEFENDANT'S AFFIRMATIVE DEFENSES SHOULD BE STRICKEN.

Plaintiff requests this Court to strike the Defendant's ten affirmative defenses as insufficient, frivolous, vague, conclusory, and without factual basis under Rule 12(f) of the Federal Rules of Civil Procedure. Defendant's affirmative defenses are merely boilerplate recitations that are so vague that they do not provide fair notice and significantly hinder Plaintiff's ability to

narrowly tailor discovery or adequately prepare for trial. Therefore, this Court should strike the Defendant's affirmative defenses or, in the alternative, require the Defendant to amend its affirmative defenses.

This Court is faced with the following issues: 1) Whether *Twombly's* plausibility standard should apply to the affirmative defenses pled by Defendant? 2) Are the ten affirmative defenses asserted by Defendant insufficient so as to warrant striking those defenses under Fed. R. Civ. P. 12(f)?

Federal Rule of Civil Procedure 12(f) authorizes this Court to "strike from a pleading an insufficient defense or any . . . immaterial [or] impertinent . . . matter." Fed. R. Civ. P. 12(f). Rule 12(f)'s purpose is to "to avoid the expenditure of time and money that must arise from litigating spurious issues." *Pugh v. City of Okla. City*, No. CIV-15-1070-D, 2015 U.S. Dist. LEXIS 166138, at *3 (W.D. Okla. Dec. 11, 2015) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). Rule 12(f) is also designed to "reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct." 5C Charles Alan Wright & Arthur R. Miller, Federal *Practice and Procedure* § 1380 (3d. ed. 2014).

Although not generally favored, motions to strike should nonetheless be granted if the asserted defenses are insufficient as a matter of law, will confuse the issues in the case, or will otherwise prejudice the moving party. *See, e.g., Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d

1045, 1057–61 (5th Cir. 1982); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); *Rodriguez v. Physician Lab. Servs., LLC*, No. 7:13-cv-622, 2014 WL 847126, at *2–3 (S.D. Tex. Mar. 4, 2014); *Rice v. Reliastar Life Ins. Co.*, No. 11-cv- 44-BAJ-M2, 2011 WL 1168520, at *2–4 (M.D. La. Mar. 29, 2011). *See generally* 5C Wright & Miller, *supra*, § 1381.

## A. Defendant's boilerplate affirmative defenses are devoid of facts and insufficient under the *Twombly* standard for pleadings.

The United States Supreme Court established new pleading standards in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). These cases require plaintiffs to not only provide fair notice of their claims but also plead sufficient facts that show that the right to relief is plausible. *Ashcroft*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56. Mere formulaic recitations of the elements of a claim for relief or "unadorned, the-defendant-harmed-me allegations," or allegations that only state "labels and conclusions" or "naked assertion[s]" "devoid of further factual enhancement" do not meet the pleading standards for a complaint. *Twombly*, 550 U.S. at 555-57. Although the Tenth Circuit Court has not resolved this issue, the vast majority of courts addressing this issue have held that *Twombly's* plausibility standard applies to affirmative defenses.

In *Kleppinger*, for example, the defendant asserted numerous affirmative defenses simply by listing the names of the defenses. *Kleppinger v.*

*Texas DOT*, 2012 U.S. Dist. LEXIS 198322 (S.D. Tex. August 10, 2012). The Court concluded "to plead an affirmative defense sufficiently, a defendant must plead "only enough facts to state [an affirmative defense] that is plausible on its face." Id. at 15. In other words, "if an affirmative defense gives fair notice of the defense by alleging sufficient facts to be plausible, then the motion to strike is futile." *Id.*

## 1. Holding defendants and plaintiffs to the same *Twombly* pleading standard promotes fairness amongst the parties.

It is simply inequitable to hold Plaintiffs to a higher pleading standard than Defendants. Just as a Defendant faced with a conclusory, vague, or factually deficient complaint, a Plaintiff should not have to respond to and prepare discovery for defenses that lack factual support.

In *U.S. v. Quadrini*, the District Court reasoned that the same pleading standards must apply to Defendants and Plaintiffs alike. *United States v. Quadrini*, 2007 WL 4303213 (E.D. Mich. Dec. 6, 2007). In *Quadrini*, the Defendant pleaded eight affirmative defenses in one sentence by naming each defense in succession. Id. at 5. "[O]therwise a court could not make a Rule 12(f) determination on whether an affirmative defense is adequately pleaded under Rules 8 and/or 9 and could not determine whether the affirmative defense would withstand a Rule 12(b)(6) challenge." Id. at 11-12. Therefore, "[l]ike the plaintiff, a defendant also must plead sufficient facts to demonstrate a

plausible affirmative defense, or one that has a 'reasonably founded hope' of success." *Id.* at 12.

## 2. *Twombly's* interpretation of Rule 8(a)(2) applies to defenses under Rule 8(b).

Rule 8(a)(2) requires that Plaintiffs plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Similarly, Rule 8(b) requires that defendants "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. Pro. 8(b)(1)(a). Both subsections of Rule 8 require a "short and plain" statement in the pleading of claims and affirmative defenses. Further, "under Rule 8(c), a defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced." *Joe Hand Promotions, Inc. v. Izalco, Inc.*, No. H-16-3696, 2017 WL 3130581, at *1 (S.D. Tex. Jul. 24, 2017) (Miller, J.) (quotations omitted) (citing *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)).

For example, in *Hayne v. Green Ford Sales, Inc.*, the court held that affirmative defenses must allege factual allegations sufficient to establish plausibility under Rule 8(b)(1)(A). *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 651 (D. Kan. Dec. 22, 2009). The court opined that Rule 8's general pleading standard, applies equally to claims and defenses. *Id.* The court reasoned that, due to the parallel terminology of the "short and plain

9

statement" language of Rule 8(a)(2) and the "short and plain terms" language of Rule 8(b)(1)(A), these rules establish the same pleading standard for claims and affirmative defenses, respectively. Id.; See also *Aguilar v. City Lights of China Restaurant*, 2011 WL 5118325, *3 (D. Md. Oct. 24, 2011).

**3. The practical purpose of *Twombly's* plausibility standard is universal to all pleadings.**

Litigation efficiency, erasing boilerplate complaints, and eliminating or at least limiting unnecessary discovery are all benefits of the *Twombly* decision. Accordingly, many courts have applied the *Twombly* standard to effectuate the same benefits. In the view of such courts, applying the heightened pleading standard to affirmative defenses serves the policy goals of *Twombly* and *Iqbal* in promoting litigation efficiency, in erasing boilerplate affirmative defenses, and in eliminating or at least limiting unnecessary discovery regarding asserted affirmative defenses.

For example, in *Burget,* the court held that the *Twombly* standard applies equally to plaintiffs and defendants, and that adverse parties should be provided enough information about an affirmative defense to allow them to tailor their discovery. *Burget v. Capital West Securities, Inc.*, No. CIV-09-1015-M, 2009 WL 4807619 (W.D. Okla. Dec. 8, 2009). The court reasoned that applying this standard to affirmative defenses was in keeping with *Twombly's* desire to avoid unnecessary discovery.

In the instant case, all or nearly all of Defendant's asserted affirmative defenses are, either, insufficiently pled or simply not affirmative defenses. Such conclusory, shotgun assertions, absent factual support and addressing the Plaintiff's complaint as a whole, as if each count was like every other count, was insufficient as a matter of law. Plaintiff can only speculate as to what the Defendant is referring to and even that is quite difficult. Applying the *Twombly* standard to Defendant's affirmative defenses would be consistent with the Supreme Court's reasoning in *Twombly* and assist the Plaintiff in eliminating, or at least, limiting unnecessary discovery in the present action.

### 4. Addressing Phoenix Affirmative Defenses about Vance Dotson Position.

SPRINT COMMUNICATIONS CO. v. APCC SERVICES, INC. (No. 07-552) 489 F. 3d 1249, June 23, 2008 affirmed.

The question before the Supreme Court was whether an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor. Because history and precedent make clear that such an assignee has long been permitted to bring suit, Supreme Court concluded that the assignee does have standing.

An assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit

11

the proceeds of the litigation to the assignor. Pp. 3–23. (a) History and precedent show that, for centuries, courts have found ways to allow assignees to bring suit; where assignment is at issue, courts—both before and after the founding—have always permitted the party with legal title alone to bring suit; and there is a strong tradition specifically of suits by assignees for collection. And while precedents of this Court, Waite v. Santa Cruz, 184 U. S. 302, Spiller v. Atchison, T. & S. F. R. Co., 253 U. S. 117, and Titus v. Wallick, 306 U. S. 282, do not conclusively resolve the standing question here, they offer powerful support for the proposition that suits by assignees for collection have long been seen as "amenable" to resolution by the judicial process, Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 102. Pp. 3–16.

Also in that litigation involves a group of aggregators who have taken claim assignments from approximately 1,400 payphone operators. Each payphone operator signed an Assignment and Power of Attorney Agreement (Agreement) in which the payphone operator "assigns, transfers and sets over to [the aggregator] for purposes of collection all rights, title and interest of the [payphone operator] in the [payphone operator's] claims, demands or causes of action for 'Dial-Around Compensation' . . . due the [payphone operator] for periods since October

1, 1997." App. to Pet. for Cert. 114a. The Agreement also "appoints" the aggregator as the payphone operator's "true and lawful attorney-in-fact." Ibid. The Agreement provides that the aggregator will litigate "in the [payphone operator's] interest." Id., at 115a. And the Agreement further stipulates that the assignment of the claims "may not be revoked without the written consent of the [aggregator]." Ibid.

After signing the agreements, the aggregators (respondents here) filed lawsuits in federal court seeking dial around compensation from Sprint, AT&T, and other long-distance carriers (petitioners here). AT&T moved to dismiss the claims, arguing that the aggregators lack standing to sue under Article III of the Constitution. The District Court initially agreed to dismiss, APCC Servs., Inc. v. AT&T Corp., 254 F. Supp. 2d 135, 140–141 (DC 2003), but changed its mind in light of a "long line of cases and legal treatises that recognize a well-established principle that assignees for collection purposes are entitled to bring suit where [as here] the assignments transfer absolute title to the claims." APCC Servs., Inc. v. AT&T Corp., 281 F. Supp. 2d 41, 45 (DC 2003). After consolidating similar cases, a divided panel of the Court of Appeals for the District of Columbia Circuit agreed that the aggregators have standing to sue.

Plaintiff respectfully request that all of Phoenix Financial Services, LLC., Affirmative Defenses dealing with Vance Dotson position as it has no legal support within the law.

## 5. Addressing Phoenix Affirmative Defenses about Bona Fide Error Defense.

Finally, Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") argues the bona fide error defense protects it from liability because it did not "inten[d] to violate the FDCPA.

Under the FDCPA,

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C.§ 1692k(c). In order to claim this defense, the burden is on the defendant to show (1) "that the presumed FDCPA violation was not intentional"; (2) "that the presumed FDCPA violation resulted from a bona fide error"; and (3) "that it maintained procedures reasonably adapted to avoid any such error." Here, Healthcare Revenue Recovery

Group, LLC d/b/a ARS Account Resolution Services ("HRRG") does not alleged the three elements to sufficiently plead the defense. Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 537 (7th Cir. 2005). Importantly, a defendant can invoke the bona fide error defense only if it claims it made an error of fact, not an error of law. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 604–05 (2010). Thus, "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." Id. Again, Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") has not meet this burden.

Here, Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") incorrectly believed that it's entitled to this defense under the FDCPA. Moreover, even if we assume that Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") made an unintentional error of fact, it still is not entitled to the bona fide error defense because it has not plead how Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") maintain procedures reasonably adapted to avoid the error. In this context, "procedures" are "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." Jerman, 559 U.S.

at 587. A "thinly specified 'policy,' allegedly barring some action but saying nothing about what action to take, is [not] an adequate 'procedure' under § 1692k(c)." Leeb v. Nationwide Credit Corp., 806 F.3d 895, 900 (7th Cir. 2015). Again, within Doc 14 all of the elements to sufficiently plead the Bona Fide Error defense isn't here.

## 6. Addressing Phoenix Affirmative Defenses about Standing and Damages.

### (a)Standing

TRANSUNION LLC *v.* RAMIREZ No. 20–297. Decided June 25, 2021

*Held:* Only plaintiffs concretely harmed by a defendant's statutory violation have Article III standing to seek damages against that private defendant in federal court. Pp. 6–27.

(a) Article III confines the federal judicial power to the resolution of "Cases" and "Controversies" in which a plaintiff has a "personal stake." *Raines* v. *Byrd,* 521 U. S. 811, 819–820. To have Article III standing to sue in federal court, a plaintiff must show, among other things, that the plaintiff suffered concrete injury in fact. *Lujan* v. *Defenders of Wildlife,* 504 U. S. 555, 560–561. Central to assessing concreteness is whether the asserted harm has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *Spokeo,*

16

*Inc.* v. *Robins*, 578 U. S. 330, 340. That inquiry asks whether plaintiffs have identified a close historical or common-law an- alogue for their asserted injury. **Physical or monetary harms readily qualify as concrete injuries under Article III, and various intangible harms—like reputational harms—can also be concrete.** *Ibid.* "Article III standing requires a concrete injury even in the context of a statutory violation." *Ibid.* The Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*, at 341. An injury in law is not an injury in fact. Pp. 6–14.

Here, Plaintiff has specifically plead actual damages in the Complaint "Debt Collector's publishing of such inaccurate and incomplete information has severely damaged the personal and credit reputation of Ms. Buckner and caused severe humiliation, emotional distress, mental anguish and damage to his FICO scores"

**(b) Damages**

As alleged Plaintiff has suffered and continues to suffer due to the actions and inactions of Healthcare Revenue Recovery Group, LLC d/b/a

17

ARS Account Resolution Services ("HRRG") Plaintiff is entitled to recovery actual damages as emotional distress See. Puloka v Columbia Debt Reovery, LLC., WD Wash. Seattle Doc 32 June 17, 2021 the testimony of the plaintiff consumer supported the jury's award of $31,120 for emotional distress.

Generally, a consumer does not have to meet the higher tort standards of intentional or negligent infliction of emotional distress under the FDCPA. Lee v. Javitch, Block & Rathbone, L.L.C., 2008 WL 1886178 (S.D. Ohio Apr. 25, 2008) (emotional distress damages for FDCPA violation do not require proof of elements of intentional infliction of emotional distress), rev'd on other grounds, 601 F.3d 654 (6th Cir. 2010). And such claims can be supported by the consumers own experience.

A number of courts have held that expert testimony is not necessary to prove emotional distress damages See, e.g., Lodge v. Kondaur Capital Corp., 750 F.3d1263 (11th Cir. May 8, 2014) (non-expert testimony may be sufficient to satisfy one prong of emotional distress analysis); McNally v. Client Serv., Inc., 2008 WL 2397489 (W.D. Pa. June 11, 2008) (consumer's testimony sufficient), adopted, 2008 WL 2987199 (W.D. Pa. July 31, 2008); DeGeorge v. LTD Fin. Serv., L.P., 2008 WL 905913 (W.D.N.Y. Mar. 31, 2008) (family members' testimony sufficient); Nelson v. Equifax Info. Serv., L.L.C., 522 F. Supp. 2d 1222, 1235, 1239 (C.D. Cal. 2007) (medical testimony unnecessary);

McCammon v. Bibler, Newman & Reynolds, P.A., 493 F. Supp. 2d 1166 (D. Kan. 2007). Cf. Baruch v. Healthcare Receivable Mgmt., Inc., 2007 WL 3232090 (E.D.N.Y. Oct. 30, 2007) (consumer testimony sufficient for emotional distress damages but more required as to physical injury damages).

Reduced credit rating is well supported as an actual damage Nelson v. Equifax Info. Serv., L.L.C., 522 F. Supp. 2d 1222 (C.D. Cal. 2007). Saunders v. Branch Banking and Trust Company of Virginia 4th Cir of Appeals No. 07-1108 Decided May 14, 2008 "BB&T therefore could have indicated that it considered the debt uncollectible and also reported that Saunders had disputed the debt; if BB&T had done so, Trans Union would have reported both the debt and the dispute and would not have considered the debt in determining Saunders' total credit score. Thus, **BB&T's decision to report the debt but not the dispute resulted in a much lower credit score for Saunders than a report of both the debt and the dispute.**"

### III. PRAYER

WHEREFORE Plaintiff prays that pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, this Court Strike Defendant's conclusory, boilerplate affirmative defenses, which are absent any factual support, and any such further relief which Plaintiff may be entitled.

Dated: February 18, 2022                    Respectfully submitted:

_Vance Dotson_

Vance Dotson                                 by and through Vance Dotson
425 W. Wilshire Blvd Suite E                 Brittney Buckner
Oklahoma City, OK 73116
405.406.7323 (telephone)
vancedotson@yahoo.com (email)

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2022, a true and
correct copy of the above and foregoing was deposited in the U.S. Mail, first
class, postage pre-paid, addressed to:

Kevin Croker

7320 N. MoPac Expwy., Ste. 400

Austin Texas 78731